UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MOHIT KUMAR,<br><br>　　　　Petitioner,<br><br>　v.<br><br>CAMILLA WAMSLEY, et al.,<br><br>　　　　Respondents. | CASE NO. 2:25-cv-01772-JHC-BAT<br><br>**ORDER GRANTING PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER** |

**I**
**INTRODUCTION**

This matter comes before the Court on Petitioner's Motion for a Temporary Restraining Order. Dkt. # 2. The Court has reviewed the materials filed in support of and in opposition to the motion, the record, and the governing law. Being fully advised, the Court GRANTS the Motion.

**II**
**BACKGROUND**

Petitioner Mohit Kumar is a 26-year-old asylum seeker from India. Dkt. # 2 at 4. He entered the United States from Canada on or about February 6, 2024. *Id.*; *see also* Dkt. # 8 at 2. Following entry, Petitioner was apprehended and detained by U.S. Border Patrol. Dkt. ## 2 at 4;

8 at 2. Border Patrol then processed Petitioner for removal proceedings, issuing a Notice to Appear (NTA) and placing him in removal proceedings. *Id*. On March 6, 2024, Border Patrol released Petitioner from custody on his own recognizance. *Id.*

It is undisputed that between March 2024 and July 2025, Petitioner complied with all the requirements of his release, including filing a timely application for asylum and appearing for all scheduled check-ins with ICE officers. *See generally* Dkt. # 8; *see also* Dkt. # 2 at 5. It is also undisputed that Petitioner received an employment authorization document in November 2024, Dkt. # 2 at 4, has no criminal history, *id.* at 5, and was residing in California as of July 2025. *Id.* at 4; *see generally* Dkt. # 8.

On July 17, 2025, Petitioner attended a scheduled check-in at the ICE office in San Jose, California. Dkt. ## 2 at 4; 8 at 3. Petitioner alleges that at the check-in, he informed an ICE officer that he wanted to move to Washington State to seek employment and requested his case be transferred to Washington. Dkt. # 2 at 4. Petitioner further alleges that the ICE officer agreed to Petitioner's request and granted him permission to transfer his case to the ICE Office in Yakima, Washington. *Id.* at 5. "Respondents have been unable to verify this claim in the short time allowed for this response." Dkt. # 8 at 3.

On July 21, 2025, Petitioner appeared at the Yakima ICE office for his first check-in in Washington State. Dkt. ## 2 at 5; 8 at 3. According to Petitioner, an ICE officer took Petitioner to a separate room upon arrival at the office, fingerprinted him, and then cuffed his wrists and ankles. Dkt. # 2 at 5. Before the arrest, the officer did not assert that Petitioner was a flight risk or a danger to the community. *Id.* The officer also did not provide any other legal justification for Petitioner's re-detention at the time of arrest. *Id.* Instead, when Petitioner asked why he was being arrested, the officer replied it was because he "came to the wrong place at the wrong time." *Id.* The ICE officer's arrest report similarly fails to provide a legal basis for Petitioner's re-

ORDER GRANTING PETITIONER'S MOTION FOR A
TEMPORARY RESTRAINING ORDER - 2

detention, stating only: "On July 21, 2025, Mohit Kumar was taken into ICE custody after he reported to the Yakima ICE office. Kumar's case was reviewed and determined that he was amenable to arrest." Dkt. # 3-1 at 3.

According to Respondents, Petitioner's appearance on July 21, 2025 at the Yakima ICE office was unscheduled. Dkt. # 8 at 3. Upon arrival, an ICE officer noticed that Petitioner "had initially failed to report an address where he could receive mail, had already filed one request to change venue for his immigration proceedings, and had failed to register or provide notice of his new address in Washington prior to his move." *Id*. (citations omitted). Due to "these observations and his own experience," the officer "believed that [Petitioner] may be attempting to delay his immigration proceedings" and "brought his concerns to the attention of the Assistant Field Office Director." *Id*. The Assistant Field Office Director revoked Petitioner's release and "[s]hortly thereafter, a warrant for [Petitioner's] arrest was issued and executed." *Id*. Respondents also note that they "have been unable to verify whether [Petitioner] was informed of the reason for his re-detention on July 21, 2025. *Id*. at 4.

Following the arrest, ICE transferred Petitioner from Yakima to the Northwest ICE Processing Center (NWIPC) in Tacoma, Washington, where he remains detained today. Dkt. ## 2 at 6; 8 at 4. Per Respondents, Petitioner requested a bond hearing before an Immigration Judge and was heard on August 11, 2025. Dkt. # 8 at 4. The Immigration Judge denied Petitioner's bond request, concluding that "the immigration court had no jurisdiction" because Petitioner "was subject to mandatory detention." *Id*.

Petitioner obtained legal counsel on September 10, 2025. *Id.* On September 15, 2025, Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in this District. *See* Dkt. # 1. The same day, Petitioner filed this separate motion, seeking a temporary restraining order (TRO), immediate release, and an order to Respondents to show cause within three days as

ORDER GRANTING PETITIONER'S MOTION FOR A
TEMPORARY RESTRAINING ORDER - 3

to why Petitioner's habeas petition should not be granted. Dkt. # 2. Respondents filed a response to Petitioner's motion for a TRO on September 17, 2025. Dkt. # 8. Petitioner's case is set for a final hearing before an Immigration Judge on September 18, 2025. Dkt. ## 2 at 6; 8 at 4.

## III
### DISCUSSION

A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (the standard for issuing a TRO is "substantially identical" to the standard for issuing a preliminary injunction). A plaintiff seeking a TRO must establish: (1) "that he is likely to succeed on the merits"; (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of equities tips in his favor"; and (4) "that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Alternatively, a petitioner who shows only that there are "serious questions going to the merits" can satisfy the *Winter* requirements by establishing that the "balance of hardships [] tips sharply towards the plaintiff" and that the remaining two *Winter* factors are met. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011). For the reasons below, the Court finds that Petitioner has satisfied the four *Winter* factors.

A.     Factor One: Likelihood of Success on the Merits

Petitioner is likely to succeed on the merits of his due process claim. The Due Process Clause prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. This protection extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful,

unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The rights guaranteed by the Due Process Clause also specifically extend to non-citizens in the context of immigration and removal proceedings. *See Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles [non-citizens] to due process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1198–1201 (9th Cir. 2022) (collecting cases on due process challenges to immigration proceedings).

In determining what process is owed to non-citizens in immigration proceedings, courts in this Circuit have applied the three-part balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976).[1] *See Rodriguez Diaz*, 53 F.4th at 1207 (collecting cases applying *Mathews* in the immigration detention context and assuming, without deciding, that *Mathews* applies); *see also E.A. T.-B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *3 n.4 (W.D. Wash. Aug. 19, 2025) (collecting cases applying *Mathews* in the immigration detention context); *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663, at *2 (W.D. Wash. Sept. 12, 2025) (applying *Mathews* to determine a non-citizen's right to a pre-detention hearing post initial release); *Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1054–55 (N.D. Cal. 2021) (same). Per *Mathews*, in evaluating whether an administrative procedure is constitutionally sufficient under the Due Process Clause, courts must consider: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3)

---

[1] Respondents appear to suggest that the Court should not apply the *Mathews* balancing test. *See* Dkt. # 8 at 9. Although Respondents are correct that neither the Supreme Court nor the Ninth Circuit has conclusively embraced the *Mathews* test in this context, the Court also notes that neither court has rejected its use or suggested that it would be inappropriate to apply it here. Additionally, district courts across the country, including within this Circuit, have recently applied *Mathews* to a number of similar cases. The Court thus finds *Mathews* to be the appropriate legal framework for resolving Petitioner's motion.

ORDER GRANTING PETITIONER'S MOTION FOR A
TEMPORARY RESTRAINING ORDER - 5

"the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.[2]

The *Mathews* factors strongly suggest that Petitioner's due process rights were violated. As to the first factor, Petitioner has a very strong interest in not being detained. The Supreme Court has repeatedly held that "the interest in being free from physical detention by one's own government" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 530 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process Clause] protects."). The Supreme Court has also "repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *5 (E.D. Cal. Mar. 3, 2025) (collecting Supreme Court cases on constitutional liberty interests post initial release from custody); *see also Hurd v. District of Columbia*, 864 F.3d 671, 683 (D.C. Cir. 2017) (same). Recently, courts throughout the Ninth Circuit have concluded that non-citizens who are released from ICE custody have a protected liberty interest under the Due Process Clause in remaining out of custody while their cases proceed.[3]

---

[2] Because Petitioner claims he was detained in violation of his constitutional right to due process, Respondents' contention that "ICE acted within its lawful authority under 8 C.F.R. § 236.1(c)(9)," *see* Dkt. # 8 at 8, does not affect Petitioner's likelihood of success on the merits for his constitutional due process claim.

[3] *See, e.g.*, *E.A. T.-B.*, 2025 WL 2402130, at *3; *Ramirez Tesara*, 2025 WL 2637663, at *3; *Becerra*, 2025 WL 691664, at *5; *Garcia v. Andrews*, No. 1:25-CV-01006 JLT SAB, 2025 WL 2420068, at *9 (E.D. Cal. Aug. 21, 2025); *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *4 (N.D. Cal. July 24, 2025); *Maklad v. Murray*, No. 1:25-CV-00946 JLT SAB, 2025 WL 2299376, at *8 (E.D. Cal. Aug. 8, 2025); *Calderon v. Kaiser*, No. 25-CV-06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21, 2025).

ORDER GRANTING PETITIONER'S MOTION FOR A
TEMPORARY RESTRAINING ORDER - 6

As with other non-citizens who have been released from ICE custody and are in the United States, Petitioner has a strong private interest in not being re-detained. Petitioner acquired a due process interest in his continued liberty upon his initial release from ICE custody. This interest only continued to grow over the next 16 months as he continued to live in the United States and comply with all ICE requirements. While Respondents are correct that non-citizens' liberty interests are not equivalent to those enjoyed by citizens, *see* Dkt. # 8 at 9, that does not negate Petitioner's liberty interest in not being detained. Petitioner's strong private interest in his continued liberty means the first *Mathews* factor weighs in his favor.

The second factor, the risk of erroneous deprivation without more procedures, also weighs strongly in Petitioner's favor. Per the record, Petitioner's re-detention by a Yakima ICE officer appears arbitrary. For example, it is undisputed that Petitioner's arrest was not preceded by a finding that Petitioner was a flight risk nor a danger to the community. *See generally* Dkt. # 8; *see also* Dkt. # 2 at 5. Respondents also have not rebutted Petitioner's contention that, at the time of arrest, he was not given a valid legal justification for his arrest or that an ICE officer told him he "came to the wrong place at the wrong time." *See* Dkt. # 8 at 3. The record also indicates that Petitioner received no notice or opportunity to respond to the allegations against him prior to or during his arrest on July 21, 2025, nor in the weeks that followed. *See* Dkt. # 2 at 12. Collectively, these facts suggest that Petitioner's re-detention was arbitrary, making the risk of erroneous deprivation quite high.

The facts also demonstrate that the probable value of additional or substitute procedural safeguards is high, as it is undeniable that the risk of an erroneous deprivation would decrease if Petitioner had received notice of the basis for his re-detention and an opportunity to be heard before a neutral decisionmaker prior to his arrest. Respondents' contention that the processes are adequate because a senior immigration official must conclude that detention is appropriate prior

ORDER GRANTING PETITIONER'S MOTION FOR A
TEMPORARY RESTRAINING ORDER - 7

to re-arrest, *see* Dkt. # 8 at 10, does not rebut this conclusion.  Further, even when the government believes it has a valid reason to detain a non-citizen, that "does not eliminate [the government's] obligation to effectuate the detention in a manner that comports with due process."  *E.A. T.-B*, 2025 WL 2402130, at *4.  Thus, the second *Mathews* factor also weighs in Petitioner's favor

Finally, the third factor, the government's interest in re-detaining Petitioner without additional procedures, also favors Petitioner.  On the current record, the government's interest in re-detaining Petitioner is minimal: the government has not shown that Petitioner is a flight risk, poses a danger to the community, or otherwise needs to be detained pending the resolution of this litigation.  *See generally* Dkt. # 8.  Respondents also have not shown that providing additional procedures would impose any burdens on the government.  *See generally id.*  Thus, although Respondents are correct that the government generally has a "heightened . . . interest in the immigration detention context," *see* Dkt. # 8 at 10 (quoting *Rodriguez Diaz*, 53 F.4th at 1206–08), Respondents have not shown how or why this heightened interest is implicated here.  *See generally id.*  Thus, the third *Mathews* factor also supports Petitioner.

As all three *Mathews* factors support Petitioner, the Court finds that Petitioner is likely to succeed on the merits of his due process claim.  Petitioner has thus satisfied the first *Winter* factor.

B.   Factor Two: Irreparable Harm

Petitioner has met his burden of establishing that he will suffer irreparable harm in the absence of a TRO.  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Accordingly, "in cases involving a constitutional claim, a likelihood of success on the merits usually establishes irreparable harm."

*Baird v. Bonta*, 81 F.4th 1036, 1048 (9th Cir. 2023). The Ninth Circuit has also recognized that immigration detention itself can impose a number of irreparable harms on non-citizens who remain in custody, including economic hardships and negative effects on other aspects of human welfare. *See Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017); *see also Leiva-Perez v. Holder*, 640 F.3d 962, 969 (9th Cir. 2011).

Here, Petitioner has demonstrated irreparable harm. As Petitioner has shown that he is likely to succeed on the merits of his due process claim, he has also established irreparable injury stemming from his alleged constitutional deprivations.[4] The Court also finds that Petitioner has adequately alleged other recognized harms, such as economic hardship, to support a finding of irreparable harm. *See* Dkt. # 2 at 16. The Court thus rejects Respondents' argument that Petitioner has "failed to demonstrate that he faces any harm other than the fact of his continued detention," *see* Dkt. # 8 at 7, and concludes that Petitioner has satisfied the second *Winter* factor.

C.   Factors Three and Four: Balance of Equities and the Public Interest

The final two *Winter* factors—balance of the equities and consideration of the public interest—also weigh in Petitioner's favor.[5] Here, Petitioner has demonstrated serious hardships as a result of his detention, most notably, a deprivation of his liberty. In contrast, Respondents have not alleged any hardships. *See generally* Dkt. # 8. The balance of equities thus weighs in Petitioner's favor.

---

[4] Other courts in this Circuit have similarly recognized irreparable injury stemming from due process violations in similar cases. *See, e.g.*, *Ramirez Tesara*, 2025 WL 2637663, at *4; *Becerra*, 2025 WL 691664, at *6; *Pinchi*, 2025 WL 2084921, at *6; *Ramirez Clavijo*, 2025 WL 2419263, at *8; *Nguyen v. Scott*, No. 25-cv-1398, 2025 WL 2097979, at *2 (W.D. Wash. July 25, 2025). Notably, Respondents fail to engage with this argument. *See generally* Dkt. # 8 at 7 (addressing economic hardship and the fact of detention but not constitutional injury).

[5] "The third and fourth factors, harm to the opposing party and the public interest, merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

ORDER GRANTING PETITIONER'S MOTION FOR A
TEMPORARY RESTRAINING ORDER - 9

A TRO is also in the public interest. "[B]ecause all citizens have a stake in upholding the Constitution," injunctions against constitutional violations generally serve the public interest. *See Hernandez*, 872 F.3d at 996 (citing *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005)). In the immigration context, courts have repeatedly held that injunctions benefit the public interest, especially where they ensure "that individuals are not deprived of their liberty and held in immigration detention because of . . . a likely unconstitutional process." *Id.*; *see also Nken*, 556 U.S. at 436 (recognizing a public interest in preventing non-citizens from being wrongfully removed). As Petitioner was likely detained in violation of his constitutional right to due process, Petitioner has met his burden of establishing that the public interest weighs in favor of a TRO. Notably, Respondents have provided no evidence to contradict this conclusion. *See generally* Dkt. # 8. Consequently, the third and fourth *Winter* factors clearly weigh in favor of Petitioner.

D.    Scope of Relief

Petitioner requests a TRO, immediate release, and an order to Respondents to show cause within three days as to why Petitioner's habeas petition should not be granted. *See* Dkt. # 2 at 19. Because Petitioner has satisfied all four *Winter* factors, the Court finds that a TRO is warranted and Petitioner's request for immediate release should be granted. The Court also grants Petitioner's request to issue an order to show cause to Respondents. But out of respect for Respondents' need for additional time to further investigate Petitioner's claims, the Court grants Respondents ten days to respond.

Respondents, however, resist this outcome, arguing that irrespective of the *Winter* factors, Petitioner's motion should be denied because: (1) the requested TRO "does not seek to merely maintain the status quo pending a determination on the merits"; and (2) any alleged harm

1   to Petitioner can be adequately addressed via a "reasonable but expedited schedule" for
2   resolution of his habeas petition. Dkt. # 8 at 6–7. Both arguments are flawed.
3       Although Respondents are correct that Petitioner's request for "immediate release from
4   custody" and a temporary injunction preventing re-detention is akin to the ultimate relief that
5   Petitioner seeks, Petitioner's requested relief is also necessary "to preserve the status quo ante
6   litem pending a determination of the action on the merits." *Tanner Motor Livery, Ltd. v. Avis,*
7   *Inc.*, 316 F.2d 804, 808 (9th Cir. 1963); *see also U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d
8   1091, 1094 (9th Cir. 2010) ("[T]he very purpose of a preliminary injunction [ ] is to preserve the
9   status quo and the rights of the parties until a final judgment issues in the cause."). As the Ninth
10  Circuit has held, the status quo *ante litem* "refers not simply to any situation before the filing of a
11  lawsuit, but instead to 'the last uncontested status which preceded the pending controversy.'"
12  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor*,
13  316 F.2d at 809). As the pending controversy stems from Petitioner's re-detention at the Yakima
14  ICE office on July 21, 2025, the last uncontested status which preceded the pending controversy
15  was Petitioner's non-detained status as of the morning of July 21, 2025.[6]
16      Additionally, Respondents appear to suggest that the Court should deny Petitioner's
17  request simply because the request for preliminary injunctive relief mirrors the relief requested
18  by Petitioner in his habeas petition. *See* Dkt. # 8 at 5–7. Respondents, however, provide no
19  precedent in support of the contention that a request for the same relief is grounds for denying a
20  TRO motion.[7] This contention also conflicts with the general principle that a preliminary

---

[6] Other courts in this Circuit have recently concluded in similar cases that immediate release is necessary to restore the status quo *ante litem*. *See, e.g.*, *Ramirez Tesara*, 2025 WL 2637663, at *5; *Phetsadakone v. Scott*, No. 2:25-CV-01678-JNW, 2025 WL 2579569, at *5 (W.D. Wash. Sept. 5, 2025).

[7] Respondents' cited cases do not support this proposition, as they involve denials of preliminary injunctive relief on entirely different grounds. *See, e.g.*, *Senate of Cal. v. Mosbacher*, 968 F.2d 974, 978 (9th Cir. 1992) (preliminary injunction denied because "the law is entirely against the position of the requesting party"); *see also Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 2861675, *2 (W.D.

ORDER GRANTING PETITIONER'S MOTION FOR A
TEMPORARY RESTRAINING ORDER - 11

injunction is appropriate only "when it grants relief of the same nature as that to be finally granted." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015); *see also De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) ("A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally."). In granting Petitioner's request, then, the Court is not improperly granting Petitioner "ultimate relief" based on a preliminary adjudication on the merits. Rather, the Court is restoring the status quo pending a final judgment on the merits of Petitioner's claims by granting temporary "relief of the same nature as that to be finally granted." *See Pac. Radiation*, 810 F.3d at 636.

Respondents' argument that the only "appropriate remedy to address any harm from [Petitioner's] continued detention during litigation would be for the Court to set a reasonable but expedited schedule that would allow both parties to obtain and present the necessary documents and information for this Court to make its decision" is also misguided. Dkt. # 8 at 7. Other courts in this Circuit have clearly rejected this argument, concluding that release following post-deprivation procedures is insufficient to remedy the alleged harm because the alleged harm, i.e., a potentially erroneous detention, has happened and is continuing to occur. *See E.A. T.-B.*, 2025 WL 2402130, at *6; *see also Domingo v. Kaiser*, No. 25-CV-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025). This suggests that Petitioner's immediate release, not an expedited briefing schedule, is the appropriate remedy. This outcome is also consistent with the recent decisions of many district courts in this Circuit and across the country that are cited throughout this order.

---

Wash. June 6, 2024) (TRO denied because "Petitioner explicitly requests a departure from the status quo").

ORDER GRANTING PETITIONER'S MOTION FOR A
TEMPORARY RESTRAINING ORDER - 12

## IV
### CONCLUSION

For these reasons, the Court GRANTS Petitioner's motion. Respondents and all their officers, agents, servants, employees, attorneys, and persons acting on their behalf, in concert, or in participation with them are:

(a) ORDERED to immediately release Petitioner from custody under the conditions of his most recent order of supervision;

(b) PROHIBITED from re-arresting or re-detaining Petitioner in connection with his existing removal order without prior approval from this Court or until this Order expires;

(c) ORDERED to show cause within ten days as to why Petitioner's habeas petition should not be granted.

This Order will remain in place for 14 days.

Dated this 17th day of September, 2025.

*John H. Chun*
John H. Chun
United States District Judge

ORDER GRANTING PETITIONER'S MOTION FOR A
TEMPORARY RESTRAINING ORDER - 13