UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MOHIT KUMAR,

    Petitioner,

v.

CAMILLA WAMSLEY. et al.,

    Respondents.

CASE NO. 2:25-cv-01772-JHC-BAT

**ORDER**

**I**
**INTRODUCTION**

This matter comes before the Court on Petitioner Mohit Kumar's Petition for Writ of Habeas Corpus (Dkt. # 1) and Respondents' Motion to Dismiss (Dkt. # 12).  The Court has reviewed the materials filed in support of and in opposition to the petition and motion, the record, and the governing law.  Being fully advised, the Court GRANTS the Petition (Dkt. # 1) and DENIES the Motion (Dkt. # 12).

**II**
**BACKGROUND**

Petitioner is a 26-year-old citizen and national of India.  Dkt. # 1 at 5.  On February 6, 2024, Petitioner entered the United States from Canada without inspection, admission, or parole.

ORDER - 1

*Id.* at 6; *see also* Dkt. # 12 at 2.  He was apprehended and detained in New York state by U.S. Border Patrol that same day.  Dkt. ## 1 at 6; 12 at 2.  On March 6, 2024, Petitioner was released into the United States on his own recognizance and issued a Notice to Appear (NTA), which instructed him to appear for an immigration hearing on February 12, 2025 in New York.  Dkt. ## 1 at 6; 12 at 3.

Several months later, Petitioner filed a Motion for Change of Venue, seeking to have his case transferred from New York to San Francisco.  Dkt. ## 1 at 6; 12 at 3; *see also* Dkt. # 9 at 2.  Petitioner's motion was granted, and he soon relocated to California.  Dkt. # 1 at 6; *see also* Dkt. # 18 at 11.  It is undisputed that between March 2024 and July 2025, Petitioner filed a timely application for asylum, received a work permit, and complied with all requirements of his release, including appearing for numerous in-person and virtual check-ins with ICE.  *See generally* Dkt.  It is also undisputed that on July 17, 2025, Petitioner attended a check-in at the ICE[1] office in San Jose, California and was enrolled in the Intensive Supervision Appearance Program (ISAP).  Dkt. ## 1 at 6; 12 at 3.  Petitioner alleges that at this check-in, he requested to have his case transferred from California to Washington state.  Dkt. # 1 at 6.  He further alleges that "[t]he ICE officer agreed" and granted him permission to have his case transferred to the ICE Office in Yakima, Washington.  *Id.*  Respondents do not dispute these allegations.  *See* Dkt. # 12 at 3 n. 2.

The parties also agree that on July 21, 2025, Petitioner appeared at the Yakima ICE office.  Dkt. ## 1 at 7; 12 at 3.  The parties, however, disagree as to what took place once Petitioner arrived.  According to Petitioner, upon arrival, an ICE officer took him to a separate

---

[1] Petitioner refers to the office and officers as "ICE."  *See generally* Dkt. ## 1 & 18.  Respondents refer to the office and officers as "Enforcement and Removal Operations" or "ERO."  *See generally* Dkt. # 12.  The Court uses "ICE" and "ERO" interchangeably in this Order.

ORDER - 2

room, fingerprinted him, and cuffed his wrists and ankles. *See* Dkt. # 19 at 3; *see also* Dkt. # 1 at 7. The officers then asked him some basic questions in English, such as his name and nationality, and requested that he sign certain documents. Dkt. # 19 at 3. Petitioner says that before signing the documents, he asked for an interpreter, and one was provided. *Id*. But at no point during this interaction was he asked about why he moved to Washington from California, or any other questions about his relocation history. *Id*.

Petitioner also alleges that before the arrest, the officer did not assert that he was a flight risk or a danger to the community, nor provide him with any other explanation for his re-detention. *See generally id.*; *see also* Dkt. # 1 at 7. Instead, Petitioner says that when he asked an officer why he was being arrested, the officer replied that he "came to the wrong place at the wrong time" and would need to "talk to the judge." *Id*. The ICE officer's arrest report also fails to provide a legal basis for Petitioner's re-detention, stating only: "On July 21, 2025, Mohit Kumar was taken into ICE custody after he reported to the Yakima ICE office. Kumar's case was reviewed and determined that he was amenable to arrest." Dkt. # 3-1 at 3.

According to Respondents, "four days after his visit to the San Jose ERO office—[Petitioner] appeared, unscheduled, at the Yakima ERO office." Dkt. # 12 at 3. Upon arrival, an officer "conducted a review of relevant databases for information about [Petitioner]" and "noticed that [Petitioner] had initially failed to report an address where he could receive mail, had already filed one request to change venue for his immigration proceedings; and had failed to timely provide [ICE] with his new addresses in the past." *Id*. (citations omitted). Respondents allege that "[b]ased on these observations and his own experience, the ERO officer believed that [Petitioner] may be attempting to delay his immigration proceedings." *Id*. Accordingly, he "questioned [Petitioner] during the encounter regarding the information in the databases," and Petitioner "did not provide any information that lessened the officer's concerns[.]" *Id*. at 3–4.

ORDER - 3

Respondents say that the officer, "following standard practice," brought these concerns to the attention of the Supervisory Deportation and Detention Officer (SDDO). *Id*. at 4. The SDDO in turn notified the Assistant Field Office Director (AFOD). *Id*. The AFOD then, in her discretion, "determined that revocation of [Petitioner's] release was appropriate[,]" at which point a warrant was issued for his arrest. *Id*.

Respondents allege that after "the decision was made to revoke [Petitioner's] release, it was explained to [him] using professional interpretation services"—he was told that his "release was being revoked based on his pattern of relocation, requests for change of venue, and failing to timely inform ERO of his relocations." *Id*. Respondents also state that during this encounter "[Petitioner] provided no additional information that lessened concerns about the delay of his immigration proceedings[.]" *Id*. Petitioner then signed a notice, acknowledging that he had received this information, and was subsequently taken into custody. *Id*.; *see also* Dkt. # 10-3.

After Petitioner's arrest, Petitioner was transferred to the Northwest ICE Processing Center (NWIPC) in Tacoma, Washington. Dkt. ## 1 at 2; 12 at 4.

On September 15, 2025, Petitioner filed a petition for writ of habeas corpus with this Court, alleging violations of his right to due process under the Fifth Amendment of the U.S. Constitution.[2] Dkt. # 1 at 11. That same day, Petitioner filed a Motion for a Temporary Restraining Order (TRO), seeking immediate release and an order to show cause as to why his petition should not be granted. Dkt. # 2 at 19, 22. The Court granted the Motion on September 17, 2025, *see* Dkt. # 11, and the parties later agreed to extend the TRO, pending this Court's resolution of the Petition. *See* Dkt. ## 14 & 15. On September 29, 2025, Respondents moved to

---

[2] The Petition also included a second count for relief—violation of 8 U.S.C. § 1357(a)(2). *See* Dkt. # 1 at 11. But as Petitioner "is no longer pursuing relief pursuant to [this count,]" Dkt. # 18 at 5 n. 2, the Court does not address this claim.

ORDER - 4

dismiss the Petition, arguing that the Court should deny the Petition and permit Respondents to re-detain Petitioner because he received all process to which he is constitutionally entitled. *See generally* Dkt. # 12. The Petition (Dkt. # 1) and the Motion (Dkt. # 12) are now ripe for decision.

### III
### DISCUSSION

A.  Legal Standards

    1.  Habeas Relief

Federal district courts have the authority to grant a writ of habeas corpus. 28 U.S.C. § 2241(a). But this relief can be extended only under certain conditions. *See* 28 U.S.C. § 2241(c). One such condition is if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" *Id.* "The [habeas] petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

    2.  Due Process

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. It "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases); *see also Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) ("'It is well established that the Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings.").

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)

ORDER - 5

(quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  And the Supreme Court has held that noncitizen "detainees are entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'"  *J. G. G.*, 604 U.S. at 673 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

In evaluating how much process is due in the immigration context, Ninth Circuit courts have recently looked to, and applied, the three-factor balancing test from *Mathews v. Eldridge*.  *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) ("*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context.").[3]  Under this test, determining whether a governmental action violates "the specific dictates of due process [ ] requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

---

[3] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test but "assume[d] without deciding" that *Mathews* applies in the context of immigration detention.  53 F.4th at 1207.  In applying *Mathews*, the *Rodriguez Diaz* Court recognized that other circuits have applied *Mathews* to due process challenges to immigration proceedings, the Ninth Circuit itself has "regularly applied *Mathews* to due process challenges to removal proceedings[,]" and the Supreme Court has applied *Mathews* to a due process challenge to an immigration exclusion hearing.  *Id.* at 1206; *see also Landon v. Plasencia,* 459 U.S. 21 (1982).  In recent months, district courts in this Circuit have repeatedly applied *Mathews* to resolve habeas petitions brought by noncitizens who are challenging their detentions.  *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025) (applying the *Mathews* test and collecting cases employing this test in the context of immigration detention); *Tzafir v. Bondi*, 2025 WL 3724708, at *4 (W.D. Wash. Dec. 24, 2025) (applying *Mathews* to a habeas petition brought by a noncitizen); *Nguyen v. Bondi*, 2026 WL 183819, at *5 (W.D. Wash. Jan. 23, 2026) (same); *Tran v. Bondi*, 2025 WL 3725677, at *7 (W.D. Wash. Dec. 24, 2025) (same).  The Court likewise applies *Mathews* here.

B.  Analysis

Petitioner contends that he is entitled to habeas relief because his re-detention on July 21, 2025 violated his constitutional right to due process under the *Mathews* test. *See* Dkt. ## 1 at 10–11; 18 at 4. The Court agrees. It thus GRANTS the Petition (Dkt. # 1) and DENIES Respondents' Motion to Dismiss (Dkt. # 12).

1.  Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]" *Mathews*, 424 U.S. at 335. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). So it is unsurprising that even conditional release "is valuable and must be seen as within the protection of the [Due Process Clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482.

This same principle applies to noncitizens who have been released into the United States, even if their release is subject to conditions.[4] As stated in this Court's previous order:

> Petitioner acquired a due process interest in his continued liberty upon his initial release from ICE custody. This interest only continued to grow over the next 16 months as he continued to live in the United States and comply with all ICE requirements. While Respondents are correct that non-citizens' liberty interests are not equivalent to those enjoyed by citizens, *see* Dkt. # 8 at 9, that does not negate Petitioner's liberty interest in not being detained. Petitioner's strong private interest in his continued liberty means the first *Mathews* factor weighs in his favor.

Dkt. # 11 at 7.

---

[4] *See, e.g.*, *Doe v. Becerra*, 2025 WL 691664, at *5 (E.D. Cal. Mar. 3, 2025) (collecting Supreme Court cases and concluding that a noncitizen who was previously released on bond has a due process interest in their continued liberty); *Espinoza v. Kaiser*, 2025 WL 2675785, at *9 (E.D. Cal. Sept. 18, 2025) (concluding that an immigrant on parole has a liberty interest protected by the Due Process clause "even where a statute allows the immigrant's arrest and detention and does not provide for procedural protections"); *Noori v. LaRose*, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) (concluding that a habeas petitioner has a protected liberty interest "even in his parole status").

Respondents' Motion to Dismiss fails to disturb this conclusion.  In fact, the Motion itself acknowledges the "weighty liberty interests implicated by the Government's detention of noncitizens."  See Dkt. # 12 at 7 (quoting *Reyes v. King*, 2021 WL 3727614, at *11 (S.D.N.Y. Aug. 20, 2021).  Although Respondents contend that "the weight of [Petitioner's] liberty [interest] must be considered in the broader picture of the immigration system, which has long acknowledged that an alien has a lesser liberty interest than a citizen[,]" *id*. at 8, such an argument has no bearing on the due process issue before the Court: while the government may detain noncitizens as part of the deportation process, noncitizens must still be afforded due process protections before they are detained.  See *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]").  Likewise, just because Petitioner may have a lesser liberty interest compared to someone who has spent more than 16 months in the United States does not mean that Petitioner possesses no liberty interest in his continued freedom.  Accordingly, the first *Mathews* factor continues to favor Petitioner.

  2.  Risk of Erroneous Deprivation of Interest Through Procedures Used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335.

Here, the Court finds that the government's procedures were constitutionally deficient.  Although the facts are disputed, the Court acknowledges that, if believed, Respondents' account would suggest that Petitioner's re-detention was not wholly arbitrary as suggested by the record previously before the Court.  See Dkt. # 11 at 7.  Yet, even assuming arguendo that Respondents' account is true, Respondents still fail to demonstrate that Petitioner received the essential

ORDER - 8

requirements of due process before being re-detained—notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (quoting *Armstrong*, 380 U.S. at 552).

Per Respondents' own account of Petitioner's re-detention, Petitioner was not provided with notice of any concerns regarding his relocation history before July 21, 2025. *See generally* Dkt. # 12. In fact, Petitioner's unrebutted allegation is that his relocations were all authorized by ICE, at least in some manner. *See* Dkt. # 18 at 11. It thus cannot be said that the government provided Petitioner with "meaningful" notice of its intent to revoke Petitioner's release before July 21, 2025. It also cannot be said that Petitioner was provided with meaningful notice on July 21, 2025, as Respondents' own evidence indicates that Petitioner was not told that his release was being revoked until *after* the decision had already been made and an arrest warrant was issued. *See* Dkt. # 12 at 4. The arrest report at Dkt. # 3-1 and the custody determination document at Dkt. # 10-3 also fail to provide a legal justification for his re-detention. Based on this record, then, the Court cannot find that Petitioner received constitutionally sufficient notice.

The Court also cannot find that Petitioner was given an "opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong*, 380 U.S. at 552). As explained by other courts in this Circuit, "[a] pre-deprivation hearing before a neutral decisionmaker is 'one of the most basic due process protections.'" *Duong v. Kaiser*, 800 F. Supp. 3d 1030, 1040 (N.D. Cal. 2025) (citation and internal quotation marks omitted); *see also Kaur v. United States Dep't of Homeland Sec.*, 2025 WL 3706724, at *6 (E.D. Cal. Dec. 22, 2025) ("At minimum, due process [ ] requires that Petitioner receive a hearing before a neutral decisionmaker" before being re-detained.). It is undisputed that Petitioner did not receive a hearing before a neutral decisionmaker. *See generally* Dkt. The Court also does not find that Petitioner's interaction with the ICE officer, even as described by Respondents,

suffices as an opportunity to be heard by a neutral decisionmaker before the deprivation occurred, as an ICE agent is not a "neutral decisionmaker" and Petitioner was already in custody. The Court thus rejects Respondents' claim that the procedures used to detain Petitioner were "constitutionally sufficient." *See* Dkt. # 12 at 8.

The Court also finds that the risk of erroneous deprivation in Petitioner's case is high. It is undisputed that between March 2024 and July 2025, Petitioner complied with the conditions of his release and maintained his status in the community without incident. Because Petitioner spent more than 16 months in the country, the Court finds a significant risk of an erroneous deprivation of Petitioner's liberty interests if the government is permitted to re-detain Petitioner without providing him with clear notice of the basis for re-detention and a meaningful opportunity to be heard before the deprivation. *See Valdez v. Joyce*, 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) ("Petitioner's re-detention without any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest."); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025) ("Providing [petitioner] with the procedural safeguard of a pre-detention hearing will have significant value in helping ensure that any future detention has a lawful basis."); *see also E.A. T.-B.*, 795 F. Supp. 3d at 1323 (collecting cases). Thus, the second *Mathews* factor favors Petitioner.

3.      Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Respondents contend that Petitioner's re-detention is warranted because the government has an interest in "preventing aliens from remaining in the United States in violation of our law" and protecting immigration proceedings from unnecessary delay. Dkt. # 12 at 10 (quoting

ORDER - 10

*Rodriguez Diaz*, 53 F.4th at 1208 (cleaned up and citations omitted)). But while the Court acknowledges these governmental interests, it does not find that they specifically apply in Petitioner's case, as Respondents have provided no evidence that Petitioner has engaged in unnecessary delay of his immigration proceedings or has otherwise violated the law. *See generally* Dkt. It also does not find that affording Petitioner with increased procedural protections, such as a pre-detention hearing, would meaningfully impact the government's stated interests. On this record, then, the Court does not find that the government has a strong interest in re-detaining Petitioner before providing him with actual notice and a meaningful opportunity to be heard.

Because the *Mathews* factors favor Petitioner on balance, the Court concludes that Petitioner's re-detention violates his constitutional right to due process. As a result, he has proven by a preponderance of the evidence that he "is in custody in violation of the Constitution or laws or treaties of the United States" and is entitled to habeas relief. 28 U.S.C. § 2241(c).

## IV
## CONCLUSION

For these reasons, the Court:

(1) GRANTS the Petition for Writ of Habeas Corpus (Dkt. # 1).

(2) ORDERS that Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf reimpose the former conditions of Petitioner's release, i.e., the conditions that were in place before Petitioner was re-detained on July 21, 2025.

(3) ORDERS that Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf are prohibited from re-detaining Petitioner unless

and until he is provided with adequate notice and a hearing before a neutral decisionmaker to determine whether re-detention is appropriate.

(4) DIRECTS the clerk to send uncertified copies of this Order to all counsel of record.

Dated this 30th day of January, 2026.

*John H. Chun*
John H. Chun
United States District Judge

ORDER - 12